# FRAME FORMBY & O'KANE

**ATTORNEYS**
ROBERT G. FRAME
MICHAEL D. FORMBY
JOHN O'KANE, JR.
MICHAEL J. NAKANO
RANDALL B. GEUY
NEIL K. FUJITANI

ATTORNEYS AT LAW, A LAW CORPORATION

FOUR WATERFRONT PLAZA, SUITE 575
500 ALA MOANA BOULEVARD
HONOLULU, HAWAII 96813
TELEPHONE: (808) 545-3043
FACSIMILE: (808) 545-3065
E-MAIL: FFOMaritime@aol.com

**LEGAL ASSISTANTS**
JANE J. ORIAS
BARBRA ENGLISH

RECEIVED
2002 JUL 12 A 9: 49
AON RISK SERVICES INC.
OF OHIO

July 9, 2002

Transmarine
Underwriting Agents
Michael Else and Company Limited
65 Leadenhall Street, London EC3A 2AD
Attn: Andrew Goodyear

> Re:  Paradise Cruise, Ltd.
>      Trade Disruption Claim
>      Terrorist Events of 9/11/01
>      Your Ref. No.: 01tdi/021

Dear Mr. Goodyear:

By way of introduction, Frame Formby & O'Kane is a maritime law firm located in Honolulu, Hawaii, and we have worked with Paradise Cruise, Ltd. for many years. We were recently asked to review a claim by Paradise Cruise, Ltd. presented to Transmarine through Accordia and AON. The claim concerns losses associated with the terrorist events of September 11, 2001, more commonly referred to as "911." We were provided with a complete copy of Paradise Cruise's policy: including but not limited to Class III - <u>Trade Disruption Insurance for the Cruise and Passenger Vessel Industry</u>, which we have reviewed in its entirety. In an effort to facilitate further discussions on Paradise Cruise's claim, we offer a couple of comments.

First, via facsimile dated 21/05/02, Transmarine took the position that "the particular terrorist acts themselves are not on this occasion the insured peril." It appears from our review of the policy that the insured peril is not per se limited to local events and, as demonstrated by the events of 911, terrorist acts can and do transcend the boundaries of states, countries and even continents. As guidance to us in reviewing the policy language, we note that "war," like "terrorist or any person acting maliciously or from a political motive," is an insured peril which can generate covered losses. In the United States, "war" is always a national act, with the individual states having no Constitutional right to declare or wage war against another country. Thus, the presence of the "war" peril instructs us that the perils listed in Section 1.1(b)(6)(ii), Institute War and Strikes Clause Hulls-Time 1/11/95, and/or 1.1(b)(9) are not limited to local or regional perils and include national perils which result in

real losses to the assured at the local and/or regional level. To our knowledge, there is no language in the policy which would indicate otherwise to the assured.

Second, via facsimile dated 21/02/02, Transmarine took the position that the public's fear of flying or decision not to travel was a personal choice, not a covered peril under the policy terms. This analysis, however, completely separates the precipitating events, or perils, from their natural consequences or foreseeable results. There is no indication or proof that the public fear of flying or reduced seat capacity during the period September 11, 2001 to December 10, 2001 was causally related to anything other than the events of 911. Using the legal test for causation, but for the events of 911, the public would not have quit flying, the airlines would not have reduced available seat capacity and your assured would not have experienced the trade disruption which resulted in its significant financial losses. It is inconceivable to us that any legal authority would construe a trade disruption policy so narrowly, absent express authority to that effect, as to preclude the natural consequences of the insured perils, particularly when those consequences relate directly to the purpose of the insurance policy - to insure against trade disruption.

Prior to the events of 911, your assured had a demonstrable and predictable history of passenger bookings which were dramatically altered by the events of 911. There is no other proposed or conceivable explanation for the immediate sharp decline in visitor arrivals to Hawaii and lost trade to your assured.

It is our understanding Transmarine has been provided statistical data, including historical data for the preceding three weeks prior to the occurrence of the insured perils and prior year data as a seasonal business, documenting the immediate and continued disruption of the assured's trade following the events of 911. Your assured's lost trade extended well beyond the specific closures of the Honolulu International Airport and/or Pearl Harbor. Since the policy specifically limits each "accident or occurrence or series of accidents or occurrences arising out of one event" to 90 days, it was reasonably contemplated by the assured that the insured risks resulting from the insured perils could and would extend beyond the actual insured perils themselves, subject of course to the express policy limitation of 90 days.

In closing, it appears there are basic policy coverage and interpretation issues which must be resolved before the merits of the assured's claimed financial losses can be further analyzed. In lieu of initiating formal legal proceedings at this stage, Paradise Cruise, Ltd. would like to try to work with the Underwriters in identifying the parties' relative positions on the policy coverage. Once these positions have been identified and explained, it may be that our

2

differences can be worked out through negotiations. If not, then Paradise Cruise, Ltd. can certainly consider legal alternatives at that time. However, presently, without knowing the precise reasons and rationale by which Underwriters have deferred taking action on Paradise Cruise, Ltd.'s claim, we are not in a position to meaningfully discuss these matters. It must be said that the "responses" received so far give the appearance of posturing, delay for its own sake, and perhaps bad faith.

In anticipation of your response to this letter, can you please assist Paradise Cruise, Ltd. by identifying Underwriters' position on the following:

1) Were the terrorist events of 911 insured perils under the Class III - <u>Trade Disruption Insurance for the Cruise and Passenger Vessel Industry</u> policy issued to Paradise Cruise, Ltd.? If not, why not?

2) Was the closure of the Honolulu International Airport an insured peril under the Class III - <u>Trade Disruption Insurance for the Cruise and Passenger Vessel Industry</u> policy? If not, why not?

3) Is the closure of Pearl Harbor to commercial traffic an insured peril under the Class III - <u>Trade Disruption Insurance for the Cruise and Passenger Vessel Industry</u> policy? If not, why not?

4) Is the assured's inability to embark passengers on its Insured Vessel in Honolulu an insured risk under the Class III - <u>Trade Disruption Insurance for the Cruise and Passenger Vessel Industry</u> policy? If not, please provide us Underwriters' interpretation of "inability to embark, tranship or disembark passengers on or from an Insured Vessel?"

5) Are there limits to the scope of Paragraph 1.1(a)(3), Risks Insured, Class III - <u>Trade Disruption Insurance for the Cruise and Passenger Vessel Industry</u>? If so, what are these limits and where are they identified and/or described in the policy?

As we will be working with Paradise Cruise, Ltd. in the processing of this claim, please copy us on any communication you have regarding Underwriters' position on the issues discussed above.

Very truly yours,

MICHAEL D. FORMBY
Attorney at Law

cc: Acordia, Bill Davis/Alan Castle
    AON, Dale Krumheuer

3

CADES SCHUTTE
A Limited Liability Law Partnership

JEFFREY S. PORTNOY            1211-0
1000 Bishop Street, Suite 1200
Honolulu, Hawaii  96813-4212
Telephone:  (808) 521-9200
Fax:   (808) 540-5040
E-mail:   jportnoy@cades.com
Attorneys for Defendant
AON RISK SERVICES, INC. OF OHIO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PARADISE CRUISE LIMITED,<br><br>       Plaintiff.<br><br>  v.<br><br>MICHAEL ELSE AND COMPANY, LTD;<br>GREAT LAKES REINSURANCE (UK) PLC,<br>dba TRANSMARINE; LLOYD'S OF<br>LONDON; LLOYD'S UNDERWRITERS;<br>ACORDIA NORTHWEST, INC; AON RISK<br>SERVICES, INC. OF OHIO,<br><br>       Defendants. | CIVIL NO. 04-00364 ACK-BMK<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on this date to the following counsel at their last-known addresses:

ImanageDB:629052.1                                7

| | |
|---|---|
| Robert E. Chapman, Esq.<br>John R. Myrdal, Esq.<br>Elise Owens Thorn, Esq.<br>Clay Chapman Crumpton Iwamura & Pulice<br>Topa Financial Center, Bishop Street Tower<br>700 Bishop Street, Suite 2100<br>Honolulu, Hawaii 96813<br><br>Attorneys for Plaintiff<br>PARADISE CRUISE LIMITED | *By Hand-delivery* |
| James D. Boughey, Esq.<br>Jeffrey Tachiki, Esq.<br>Wilson, Elser, Moskowitz, Edelman & Dicker, LLP<br>650 California Street, 14th Floor<br>San Francisco, California 94108-2718<br><br>Attorneys for Defendant<br>ACORDIA NORTHWEST, INC. | *By U.S. mail, postage prepaid* |
| Bradley M. Rose, Esq.<br>B. Otis Felder, Esq.<br>Kaye, Rose & Maltzman LLP<br>1801 Century Park East, Suite 1500<br>Los Angeles, California 90067<br><br>Attorneys for Defendant<br>WATKINS SYNDICATE | *By U.S. mail, postage prepaid* |

DATED: Honolulu, Hawaii, January __, 2006.

_____
JEFFREY S. PORTNOY
Attorneys for Defendant
AON RISK SERVICES, INC. OF OHIO